**Ben B. BEGGS, Appellant,**

**v.**

**Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Appellee.**

**No. 10075.**

United States Court of Appeals Fourth Circuit.

Argued Dec. 9, 1965.

Decided Jan. 20, 1966.

Edmund D. Wells, Jr., Bluefield, W. Va., for appellant.

Michael W. Werth, Atty., Dept. of Justice (John W. Douglas, Asst. Atty. Gen., and Sherman L. Cohn, Attorney, Department of Justice, and Milton J. Ferguson, U. S. Atty., on brief) for appellee.

Before HAYNSWORTH, Chief Judge, and SOBELOFF and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge.

The petitioner appeals from summary judgment of the district court affirming the Secretary's decision that he was not entitled to a period of disability and to disability insurance benefits under sections 216(i) and 223(a) of the Act. 42 U.S.C. 416(i) and 423(a). The petition was filed January 5, 1961.[1] On June 9, 1961, the West Virginia Vocational Rehabilitation Agency denied the application. On September 27, 1961, the Bureau again denied upon review. On July 23, 1963, a Hearing Examiner denied the ap-

1. The petitioner was 45 years of age. He had a fifth grade education. He had worked in the mines since he was 15 years of age. He had a wife and 4 children at the time of his discharge for lack of work.

plication as of the critical date April 5, 1961.

After reviewing the record and finding "no significant organic disease", the Examiner's report continues:

"Nonetheless, it is fairly certain that the claimant's economic situation has produced severe anxiety, and this is being manifested by many bodily complaints, in particular chest pain, headaches, dizzy spells and depression. The prolonged anxiety that this claimant has suffered has resulted in a personal deterioration, and a slowing down of all his thought processes and emotional responses. The psychiatrist, however, is perfectly aware that the situation is a result of unemployment, and that a major part if not all of his symptoms will be reduced or markedly minimized by reemployment. The claimant's somatic response to his situation and to his dependence on Public Assistance has been self destructive, yet it cannot be held from the evidence that the claimant is disabled within the meaning of the Social Security Act. There is no organic disease. The anxiety reaction is mainly a response to a deplorable economic situation. The claimant's psychiatric condition can be characterized as long continued only in the sense that job opportunities are wanting. There is no evidence of hallucinations or delusions or disabling mental disease, and the claimant is oriented as to time and place. The slowing down of his mental processes, and his depression, are not an abnormal reaction to five years of unemployment and public assistance. This has had a destructive effect upon the claimant's life and personality. There is no doubt that this man has many psychiatric complaints, but psychotherapy does not seem to be the answer to his problems. This claimant needs a job which will restore his self respect. Even if it were permissible, the substitution of social security benefits for public assistance, would not resolve his problems. This claimant is able to work, physically and mentally, and will be able to work if the economic condition in his area improves or if work can be found for him. The evidence cannot permit a finding that there is a physical or mental impairment severe enough to disable him from returning to his former employment or to some type of manual work. As stated above the emotional condition is a consequence of his unemployment rather than a cause of it."

We find no evidence in this record to support the finding that the petitioner was not mentally disabled within the meaning of the statute, and we think the record as a whole demands such a finding. The first visit to the hospital in September of 1959 during which the petitioner exhibited symptoms of cardiac failure resulted in a diagnosis of hypertension. This visit plus the subsequent visit the following November failed to confirm the existence of organic disease, but the diagnosis clearly supported the existence of increasing mental stress and nervousness as the underlying cause of the disability exhibited by chest pains, vomiting, blackouts and severe headaches. The report of the November 9th–10th, 1959, hospital confinement disclosed a depressed personality resulting from economic strain. In both the January and April 1961 examinations the reports focused more and more on the mental condition. The August 1961 psychiatric examination, which the record discloses was the first given to petitioner by a specialist, resulted in a diagnosis of psychoneurosis, chronic and moderately severe.

The entire record shows a steady and increasing deterioration in the petitioner's mental condition which had already produced totally disabling symptoms by September of 1959, one year after loss of employment. We cannot understand the significance of the examiner's finding that the mental condition was the result and not the cause of petitioner's unem-

ployment. This was obviously true, but the mental condition was nonetheless disabling within the statute. It may also have been true that a job in the coal mines would have improved the petitioner's health, but this is beside the real issue which is that the petitioner was not in condition to work as of April 5, 1961, in the face of the hysteria which the record showed. The psychiatrist did not say that a job would cure the petitioner, thus implying his ability to work; the report said that economic security would doubtless improve his condition. This conclusion involves no implication of ability to work. There is no charge of malingering, indeed the report of August 1, 1961, is to the contrary:

> "This man's 'blackout' spells coming as they did at the time of stress, namely the loss of a good secure job, and the character of the accompanying symptoms of nervous spells, insomnia, pains, headaches, nightmares, etc., suggest that his disorder is a functional one. He suffers a rather typical anxiety reaction. He has no awareness that his condition is anything but a physical one and has been led to accept it as physical by the medical treatment given him. He has picked up such diagnoses for himself from the physicians as 'heart attack' and 'hardening of the arteries.' I do not think he could be led to accept his disorder as one based upon emotional disturbance and induced to consider psychiatric treatment. He might be helped by purely supportive psychiatric treatment and tranquilizing drugs."

Finally, a follow-up examination by the same psychiatrist in March of 1963 concluded with the diagnosis of "anxiety reaction, chronic and severe, with depressive features." [2]

We think this record speaks for itself and when considered as a whole leaves the

clear conviction that the Secretary was in error and that the petitioner was unable to engage in any substantial gainful activity as of the critical date by reason of his mental disability. United States v. United States Gypsum Co., 333 U.S. 364, 394, 68 S.Ct. 525, 92 L.Ed. 746. The judgment of the district court is reversed with directions to enter judgment for petitioner.

Reversed.

---

**2.** A March 1964 report of the Veterans' Administration shows that at that time the petitioner was a patient in the VA hospital with far advanced pulmonary tuberculosis. On a subsequent application the petitioner was found to have been disabled by tuberculosis as of June 30, 1963. We are concerned here only with the interim benefits for the period between April 1961 and June 1963.