Darvin **WEBB**, Petitioner,

v.

**RAILROAD RETIREMENT BOARD,**
Respondent.

**No. 16371.**

United States Court of Appeals
Sixth Circuit.

April 11, 1966.

Ronald W. May, Pikeville, Ky., Dan Jack Combs, Combs & May, Pikeville, Ky., on brief, for petitioner.

Dale G. Zimmerman, Chicago, Ill., Myles F. Gibbons, General Counsel, David B. Schreiber, Associate General Counsel, Railroad Retirement Board, on brief; Louis Turner, Railroad Retirement Board, Chicago, Ill., of counsel, for respondent.

Before WEICK, Chief Judge, EDWARDS, Circuit Judge, and CECIL, Senior Circuit Judge.

WEICK, Chief Judge.

This is a proceeding to review a decision of the Railroad Retirement Board which adjudged that petitioner was not entitled to an increase in his occupational benefits of $98.70 a month, which were awarded to him under Section 2(a), par. 4 of the Railroad Retirement Act[1] (45 U.S.C. § 228b(a), par. 4). His claim before the Board was that he was entitled to additional benefits pursuant to the over-all minimum guaranty provisions contained in Section 3(e) of the Act[2] (45 U.S.C. § 228c(e)).

In allowing petitioner the occupational benefits of $98.70 a month, the Board determined that petitioner had a permanent physical condition which disabled him for work in his regular occupation as a section laborer for a railroad company.

However, in order to be entitled to additional benefits his disability must be of the type which was compensable under the Social Security Act, and it was necessary for petitioner under that Act to prove that he was unable "to engage in *any substantial gainful activity* by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration." (Italics ours.) 42 U.S.C. § 423(c) (2).

1. Section 2(a), par. 4 of the Act provides, in pertinent part, as follows:

"Sec. 2(a) The following-described individuals, if they shall have been employees on or after the enactment date, and shall have completed ten years of service, shall * * * be eligible for annuities after they shall have ceased to render compensated service to any person, whether or not an employer as defined in section 1(a) (but with the right to engage in other employment to the extent not prohibited by subsection (d)):

\*   \*   \*   \*   \*

"4. Individuals having a current connection with the railroad industry, and whose permanent physical or mental condition is such as to be disabling for work *in their regular occupation*, and who (i) will have completed twenty years of service or (ii) will have attained the age of sixty. * * *" (Italics ours.)

2. Section 3(e) of the Act provides in pertinent part:

"* * * That if for any entire month in which an annuity accrues and is payable under this Act the annuity to which an employee is entitled under this Act * * * is less than 110 per centum of the amount, or 110 per centum of the additional amount, which would have been payable to all persons for such month under the Social Security Act * * * if such employee's service as an employee after December 31, 1936, were included in the term 'employment' as defined in that Act * * * such annuity * * * shall be increased * * * to a total of 110 per centum of such amount or 110 per centum of such additional amount. * * *"

In support of his claim petitioner submitted medical reports of his two attending physicians, Dr. J. A. Stumbo and Dr. L. C. McCloud. The Board had statements of petitioner. It procured a medical report of the physician of petitioner's employer, Chesapeake & Ohio Railway Company, and reports of two other medical examinations which were made at its request. No oral hearing was conducted by the Board.

The Bureau of Retirement Claims (the Board's initial adjudicating unit) made a determination that petitioner was not entitled to the increased benefits. Petitioner then appealed to the Appeals Council (the Board's intermediate appellate body). He asked for an oral hearing to present evidence and arguments orally, which the Council granted but ordered it to be held in Chicago, Illinois. Petitioner advised the Appeals Council that he did not have the funds and was physically unable to make the trip from his home in Kentucky to attend the hearing in Chicago. The Appeals Council then decided not to have an oral hearing and approved the initial decision of the Bureau of Retirement Claims on the basis of the medical reports in the record.

Petitioner then appealed to the Board, which adopted findings of fact and conclusions of law on the statements and reports in the record.

■ Petitioner contends that the Board's decision was not supported by substantial evidence and that on the basis of the medical reports in the record he was entitled to an award of increased benefits. The determination of this question requires consideration of the record. We are of the opinion, for the reasons hereinafter set forth, that considering the record as a whole there was not substantial evidence to support the Board's order.

At the time petitioner filed his application for increased benefits in 1963, he was fifty-five years old. He had worked for the Chesapeake & Ohio Railway Company as a section laborer for a period of about twenty-nine years. Prior to working for the Railway Company, he was a common laborer in a coal mine. He had a fourth grade education. He was married and has five children who were attending school and living at home. Petitioner has not worked since April 27, 1962.

Dr. Stumbo made three reports concerning his examinations and treatment of petitioner. In the first report he stated that Webb was a frequent office patient for chest pains, arthritis, sinus trouble and indigestion. Webb complained of shortness of breath and joint pains. His general appearance was fair but nutrition, muscular development, carriage and posture were poor. His gait was sluggish. He had no teeth. He had myocardosis with right side of the heart enlarged. Stress examination indicated that before exercise respiratory rate was 20, pulse rate 74, and blood pressure 140/95. Immediately following exercise respiratory rate rose to 32, pulse rate 90, and blood pressure 150/95. Three minutes after exercise respiratory rate was 24, pulse rate 84, and blood pressure 145/70. The peripheral arteries were not normal but indicated arteriosclerosis. Rales were heard in both lung fields. Reflexes were exaggerated and there was a tremor. He had ankle edema. Doctor Stumbo's diagnosis was (1) extreme nervousness, migrane; (2) gastric neurosis; (3) multiple arthritis; (4) arteriosclerosis (with) heart involved.

Dr. Stumbo's second report was to the effect that Webb was totally and permanently disabled from any gainful occupation. The third report indicated that Webb's weight had receded to 120; the heart was enlarged to the left, blood pressure 155/90, arteries thickened, and ankles swollen. He still had rales in both lungs. His diagnosis was myocardial failure, bronchiectasis, chronic gastric neurosis and vomiting. He repeated that Webb was totally and permanently disabled.

Dr. McCloud's first report was to the effect that Webb appeared to be totally and permanently disabled and had hypertension. The second report was more

detailed. He found the heart was enlarged to the left and there were 2–3 premature ventricular contractions per minute. He found coarse breath sounds and rhonchi. Rales were heard in both lower lung fields. Flexion of the spine was limited to 80°. His diagnosis was (1) hypertensive cardiovascular disease; (2) chronic bronchitis; (3) arthritis of the spine.

Dr. Hall, who was the physician for the Railway Company, found impaired vision, hearing and evidence of cardiovascular disease. His diagnosis was rheumatoid arthritis generalized presumptive 2+, moderately severe hypertension and 2+ arteriosclerosis. He said, "I doubt he's worth a decent day's work," and he did not expect his condition would improve. He said Webb was able to do some type of work, "but was not capable or trained in any."

The Board secured a report from Dr. James D. Evans of the Miners Memorial Hospital Association. His impressions were (1) Hypertensive cardiovascular disease with E.K.G. abnormalities but no definite symptomatic complication; (2) Osteoarthritis; (3) Adult situational reaction; (4) Serous otitis media; (5) Infected sebaceous cyst left back; (6) Sipoma, right back. He found that the heart was not enlarged to percussions.

The Board arranged for examinations at The Highlands Clinic. A report was made by Dr. Paul E. Walker, of an orthopedic examination. He found that little orthopedic disability existed. His diagnosis was (1) mild hypertrophic arthritis of the lumbar spine; (2) Callus formation on plantar surface of the left foot beneath the metatarsal head; (3) Round back, mild, due to change in aging; (4) Mild prostatic hypertrophy; (5) Chronic bronchitis; (6) Internal and external hemorrhoids.

Dr. Evans made a second examination of Webb. He found dyspnea on moderate exertion, which means that Webb had difficulty in breathing or shortness of breath. He concluded that Webb had hypertensive cardiovascular disease; probable arteriosclerotic heart disease, and coronary artery sclerosis. Functional capacity was graded according to the American Heart Association as II and Therapeutic capacity as B. He found no impairment of peripheral vascular circulation.

It is apparent from the foregoing that Webb's two attending physicians, Doctors Stumbo and McCloud, the Railway's physician, Dr. Hall, and the Board's doctor were all in agreement that Webb had arteriosclerosis and heart disease. Doctors Stumbo and McCloud were of the opinion that he was totally disabled and unable to pursue any substantial gainful occupation. Dr. Hall doubted that "He's worth a decent day's work," and said that his condition was not expected to improve. He thought Webb was able to do some type of work "but was not capable or trained in any." Dr. Evans, who was employed by the Board, diagnosed Webb as having hypertensive cardiovascular disease, probable arteriosclerotic heart disease, and coronary artery sclerosis.

The Board was of the view that Webb's blood pressure varied from a mild to a moderate degree of hypertension, depending upon the circumstances involved, and was not of a consistently high degree which indicated that it should be controlled by proper medical management; consequently it need not be considered disabling; that the heart classification of II–B points to a need for only slight limitation in ordinary activity. It determined that Webb had little orthopedic disability, which would not prevent him from working in some type of substantial gainful activity such as coach cleaner and janitor.

This ruling by the Board would seem to be inconsistent with its previous determination upon which it made a monthly award of occupational benefits of $98.-70, namely, that Webb's physical condition was such as to permanently disable him from working in his regular occupation as a section laborer. It ignored the diagnosis of Webb's two attending physicians that he was totally and permanently disabled and disregarded the Railway's

physician's report that Webb was "not worth a decent day's work."

In our opinion the evidence in this case does not support the Board's position that hypertensive cardiovascular disease, probable arteriosclerotic heart disease and coronary artery sclerosis are all minor disorders indicating only slight impairment of functions. The record here does not show what Functional capacity II means, other than the statement of the Board.

There was no proof in the record as to the duties required of a janitor or coach cleaner, or that Webb could perform those duties. There was no evidence that these jobs were available to Webb in the general area where he lived.

 Since the application filed by Webb was for additional benefits under the Social Security Act, the decisions governing disability claims under that Act are applicable.

Here the Board admits that Webb was disabled from performing the duties of his regular occupation. The burden then was on the Board to prove that he was able to perform some other kind of substantial gainful activity which under normal conditions might be available to him in the general area in which he lived. Slone v. Gardner, 355 F.2d 485 (6th Cir. 1966); Miracle v. Celebrezze, 351 F.2d 361 (No. 15,992 6th Cir. 1965); Massey v. Celebrezze, 345 F.2d 146 (6th Cir. 1965); Ratliff v. Celebrezze, 338 F.2d 978 (6th Cir. 1964); Thompson v. Celebrezze, 334 F.2d 412 (6th Cir. 1964); Prewitt v. Celebrezze, 330 F.2d 93 (6th Cir. 1964); Jones v. Celebrezze, 321 F.2d 192 (6th Cir. 1963); Rice v. Celebrezze, 315 F.2d 7 (6th Cir. 1963); Hall v. Celebrezze, 314 F.2d 686 (6th Cir. 1963); King v. Flemming, 289 F.2d 808 (6th Cir. 1961); Hall v. Flemming, 289 F.2d 290 (6th Cir. 1961). No such proof was offered by the Board here.

The Board said:

"Although opinions of physicians as to the extent of appellant's disability are entitled to due weight, the law imposes upon the Board the duty of making determinations on applications for annuities under the Act; and the question whether an individual has a disability which would make him entitled to benefits under the Act must be decided by the Board."

In our judgment the decision of the Board must be supported by substantial evidence. Universal Camera Corp. v N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Here it was not.

The decision of the Board is set aside and the case is remanded with instructions to allow the claim for increased benefits.