John S. COLEMAN, Plaintiff,

v.

John W. GARDNER, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 988.

United States District Court
S. D. West Virginia,
Bluefield Division.

Jan. 24, 1967.

J. N. Harman, III, Welch, W. Va., for plaintiff.

Milton J. Ferguson, U. S. Atty., Huntington, W. Va., for defendant.

CHRISTIE, District Judge:

 This is an action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. A decision by a hearing examiner on April 22, 1966, became the final decision of the Secretary on June 30, 1966, when the Appeals Council denied plaintiff's request for review. The final decision holds that, on the basis of his application filed May 13, 1965, plaintiff is not entitled to a period of disability or disability insurance benefits under the provisions of the Act prior or subsequent to the 1965 Amendments.[1]

 Plaintiff meets the special earnings requirements of the Act through the quarter ending September 30, 1966. Under the Act, 42 U.S.C.A. § 416(i), an individual shall not be considered to be under a disability unless he furnishes such proof of the existence thereof as may be required. Thus, the burden is upon the plaintiff to establish by credible evidence that he was disabled within the meaning of the Act prior to June 30, 1966, when the decision of the Secretary became final. However, this need not be carried beyond a reasonable doubt. Thomas v. Celebrezze, 331 F.2d 541 (4th Cir. 1964).

 The standard of review in actions of this nature is found in Section 205(g) of the Act, as amended, and is as follows:

"The findings of the Secretary as to any fact, if supported by substantial evidence shall be conclusive * * *."

In short, the courts are not to try the case de novo, and if the findings of the Secretary are supported by substantial evidence, the courts are bound to accept them. Underwood v. Ribicoff, 298 F.2d 850 (4th Cir. 1962). Nevertheless, it is said that this provision of the law does not contemplate that the courts should surrender their "traditional function," but rather that they will view the record as a whole, not for the purpose of making an independent finding, but to determine whether or not the finding is supported by substantial evidence and to see to it that the administrative agency does not act arbitrarily or capriciously in denying

---

1. Section 303(a) of Public Law 89-97 (the 1965 Social Security Amendments) amends the meaning of the term "disability" as found in 42 U.S.C.A. § 423 as follows: "(I)nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *." Previously the physical or mental impairment had to " * * * be expected to result in death or to be of long-continued and indefinite duration."

Under the provisions of Section 303(f) of the law a period of disability may be established by use of this amended definition. However, benefits would only be payable beginning in September 1965 or the seventh month in which an individual has been determined to be under a disability under the amended test, whichever is later.

just claims or allowing unworthy ones. Thomas v. Celebrezze, supra; Underwood v. Ribicoff, supra; Snyder v. Ribicoff, 307 F.2d 518 (4th Cir. 1962). In determining the meaning of "substantial evidence," the courts have held it to be more than a scintilla, but less than a preponderance. Thomas v. Celebrezze, supra. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion and it must be based on the record as a whole. Celebrezze v. Bolas, 316 F.2d 498 (8th Cir. 1963). The Fourth Circuit has pointed out that if there is only a slight preponderance of the evidence on one side or the other, the Secretary's findings must be affirmed. Underwood v. Ribicoff, supra. Therefore, the immediate task of this Court is to determine whether the defendant's denial of plaintiff's claim is supported by substantial evidence.

In his application filed May 13, 1965, plaintiff alleges he became disabled as of June 3, 1964, due to an enlarged heart, ruptured ulcer and arthritis. He was born August 5, 1935 and has a fourth grade education. He is married and has four children. His work experience has been, for the most part, rather laborious, cutting timber, hand loading coal, loading trucks; however, he has also held some factory jobs such as drill press operator and wood lathe operator, which were less arduous. His last employment was from October 1963 to June 1964, under the ADCU program, cleaning forest, building road, cutting brush, etc., in a state park.

The earliest medical report is that of Dr. Guy E. Irvin, dated June 23, 1964. Plaintiff complained of pain in his knees and back. The examination was essentially normal with the exception of a diagnosis of bilateral leg varicosities. Dr. Irvin recommended a surgical evaluation.

On December 15, 1964, plaintiff was given a surgical evaluation by Dr. Ray E. Burger. The examination revealed a normal range of motion in the hips, knees, and feet as well as the neck, shoulder, elbows, hands and fingers. The ligaments were firm and there was no evidence of cartilage injury. There were a few varicose veins in both legs, worse in the left leg. Chest and abdomen examinations were essentially negative. X-rays of the lumbosacral spine and right knee showed no evidence of fracture or dislocation. The intervertebral discs were fairly well maintained and there was no evidence of destructive process. The 5th lumbar vertebra was almost completely sacralized. There was a large ossicle adjacent to the tibial tuberosity in the patellar tendon, probably secondary to an old epiphysitis of the tibial tuberosity. The doctor stated that he could find very little wrong with plaintiff from an orthopedic and surgical standpoint.

Dr. O. Lake Huffman examined plaintiff in May 1965 for the West Virginia Department of Welfare. He found plaintiff to be "real nervous" and to have an enlarged heart. The diagnosis was (1) cardiac hypertrophy Grade III; (2) peptic ulcer, subacute; (3) rheumatoid arthritis Grade II, multiple joint involvement; and (4) varicose veins of left leg, severe. He believed plaintiff to be fully disabled, but the report gave no objective clinical, X-ray, electrocardiogram or laboratory findings.

On July 8, 1965, Dr. William C. Stewart examined plaintiff for the West Virginia Vocational Rehabilitation Division. Examination revealed a Grade II systolic heart murmur. However, an electrocardiogram was normal and showed no evidence of disease. X-rays of the chest, lumbar spine and sacro-iliac joints were normal. The knees and ankles showed no redness, swelling or loss of motion, and no evidence whatsoever of inflammatory arthritis. Dr. Stewart was of the opinion that in view of the lack of objective findings and in view of the X-rays, there appeared to be no justification for a diagnosis of inflammatory type rheumatism or disabling disease of the spine, hips or legs.

Plaintiff was examined in November 1965 by Dr. E. K. Whitley, Jr. for the West Virginia Department of Welfare. The doctor found him to be suffering

from extreme anxiety in regard to his health in general and his economic condition. He also found lumbar pain and tenderness with multiple joint complaints. The diagnosis was (1) chronic degenerative arthritis; (2) chronic anxiety tension state, severe; and (3) chronic dyspepsia. He was of the opinion that plaintiff was not able to have regular employment. In a February 14, 1966 "To Whom It May Concern" letter, Dr. Whitley stated that he had been treating plaintiff for the past 12 months for (1) degenerative arthritis, moderately severe; (2) peptic ulcer, asymptomatic at present; and (3) anxiety tension state, moderately severe. He felt that only condition (3) was sufficiently severe as to be disabling and that the conditions were chronic and not expected to improve. It was felt that there were certain types of jobs that he could physically accomplish, but that he was handicapped by his mental anxiety and training level.

On October 25, 1965, plaintiff received a neuropsychiatric consultative medical examination at the Bluefield Mental Health Clinic. Based upon clinical impression, plaintiff was considered to be of low intellectual capacity, probably in the mild range of mental deficiency. He was felt to be a rather grossly immature, emotionally unstable individual who had marginally adjusted to social and financial responsibilities periodically throughout his life but who had such poor stress tolerance that when faced with these responsibilities he became tense, anxious and experienced conversion and psychophysiological features. The diagnostic impressions were: Anxiety reaction, moderate to severe, chronic, psychophysiological reaction, shortness of breath, dizziness, etc. It was recommended that in view of his limited adequacy, limited educational resources and intellectual capacity and his use of illness as a method of avoiding the stress of life, he should be helped to avoid additional stress in life such as having additional children. It was felt that he might benefit from vocational rehabilitation.

In deciding whether or not the Secretary's determination is supported by substantial evidence, the Court must examine not only the objective findings of the examining and treating physicians, including their diagnoses and expert medical opinions, but the subjective evidence of pain and disability as well as plaintiff's educational background, work history and present age. Underwood v. Ribicoff, supra; Dillon v. Celebrezze, 345 F.2d 753 (4th Cir. 1965).

In this instance, plaintiff's youth and sketchy work record mitigate against his claim. The Act's disability benefit provisions are designed primarily to aid workers who, after having made a contribution to the nation's work force, are unable to continue. It is not intended, nor should we allow it to become, a substitute for the various Federal and State direct relief programs for the socially deprived. We will review the instant record cognizant of the Act's purposes and judicially aware of the previously-mentioned programs.

The manner in which the examiner dealt with plaintiff's various ailments does not amount to a fragmentation of his overall condition within the meaning of Dillon v. Celebrezze, supra. In view of the evidence, it was proper and we agree with his determination that the better evidence supports a finding that there is no showing of a serious heart or arthritic condition. Nor does it appear that the ulcer or varicose veins are presently severe enough to be disabling.

It is recognized that pain unaccompanied by any objectively observable symptoms is sufficient to support a claim for disability benefits. Ber v. Celebrezze, 332 F.2d 293 (2d Cir. 1964). The instant record does not indicate such a degree of pain and in fact it is obvious that plaintiff's condition is in large measure psychological. The psychiatrist's statement that "illness is the best adjustment available to him at the present time, and this is the socially accepted method of avoiding the stresses

of life" makes this clear. Dr. Whitley, likewise, believed that it was plaintiff's anxiety that presented the greatest degree of handicap. While recognizing that the question is what the individual claimant can bear, Dodsworth v. Celebrezze, 349 F.2d 312 (5th Cir. 1965), and while plaintiff doubtless has some sensation of pain, unlike the theoretical situation mentioned in Mode v. Celebrezze, 359 F.2d 135 (4th Cir. 1966), there is an utter lack of competent psychiatric evidence in this record to show that the pain he suffers is sufficiently severe to be disabling.

Notwithstanding the anxiety and other conditions, Dr. Whitley was of the opinion that plaintiff retained the capacity to engage in certain types of gainful activity. We recognize that working for a living might be considered one of life's stresses which the psychiatric report advises should be avoided, however, we do not believe that this was its intent, since the report also contains the statement, though equivocal, that "He might possibly be able to benefit from Vocational Rehabilitation Services if his physical condition permits." This indicates that plaintiff retains some work capacity and the fact that plaintiff claims the rehabilitation representatives told him he did not have enough education for retraining fails to detract from the report's implication.

We can find no evidence in this record that is indicative of a steady and increasing deterioration in plaintiff's mental condition as was found in Beggs v. Celebrezze, 356 F.2d 234 (4th Cir. 1966). Absent such finding, caution must be exercised lest the doctrine enunciated in *Beggs* be abused. Thus, considering the record as a whole, we are unable to say that it lacks substantial evidence to support the Secretary's finding that plaintiff's condition, mental or physical, was not disabling within the meaning of the Act prior to June 30, 1966.

■ It is well established that once the claimant has shown an inability to return to his usual occupation, the burden becomes the Secretary's to show that there is generally available for him employment for which he is fit and qualified. Torres v. Celebrezze, 349 F.2d 342 (1st Cir. 1965); Ray v. Celebrezze, 340 F.2d 556 (4th Cir. 1965); Wimmer v. Celebrezze, 355 F.2d 289 (4th Cir. 1965). The examiner found that plaintiff "has not been precluded from gainful employment in a number of light job classifications existing in his work area, samples of which were listed by the vocational witness." He also stated that plaintiff's condition was not sufficiently severe as to disable him from the type of work he had performed and is capable of performing. Consequently, although the Secretary recognized his inability to return to some of his prior heavy occupations, there was insufficient evidence to find that others were beyond his capacity.

■ The Secretary need not show that a particular employer has a job available for the claimant or in every case that employment exists within a specific geographical boundary. Wimmer v. Celebrezze, supra. In this instance the vocational witness testified to the existence of a number of jobs in plaintiff's home area. These were jobs he felt were within plaintiff's capacity to perform and from which handicapped individuals were not excluded. The examiner agreed with these conclusions.

■ We realize that employers are concerned with substantial capacity, psychological stability and steady attendance in the selection of their employees, that their health and liability insurance costs will not be unduly increased. Thomas v. Celebrezze, supra. We also recognize that we must look to the probability of this particular plaintiff's being realistically expected to obtain a job. But the plaintiff is unlikely to receive one of these jobs only because he will not seek it. This, however, is not the criterion for awarding benefits.

■ The record before us contains substantial evidence on which the Secretary could reasonably find that plaintiff retained the capacity, both mental and

physical, to engage in a number of light jobs. Some of these he had held prior to the onset of his alleged disability. The jobs suggested exist within his local area among employers who do not show discrimination toward individuals having no greater disability than plaintiff has established. Individuals properly motivated, having like or similar work capacity as plaintiff, could reasonably be expected to seek and secure one of these positions, and so should this plaintiff.

It should be pointed out that plaintiff's insured status continues through the quarter ending September 30, 1966, and should his condition deteriorate he would be well advised to reapply for benefits. Nevertheless, on the basis of his application filed May 13, 1965, we are of the opinion that, in view of the record as a whole, a reasonable mind could very well have reached the same conclusion as did the Secretary—that the evidence fails to establish the claim asserted—and that being so, the defendant's Motion for Summary Judgment must be granted.