**Roy N. MULLINS, Plaintiff,**

v.

**Wilbur J. COHEN, Secretary of Health, Education & Welfare, Defendant.**

**Civ. A. No. 68–C–77–A.**

United States District Court
W. D. Virginia,
Abingdon Division.

Feb. 13, 1969.

Merrell I. Budnick, Northfork, W. Va., and W. Clyde Dennis, Grundy, Va., for plaintiff.

William C. Breckinridge, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, Chief Judge.

Roy N. Mullins, the claimant, brings this action under section 205(g) of the Social Security Act, 42 U.S.C.A. § 405 (g), for review of a decision of the Secretary of Health, Education and Welfare. The Secretary's decision denied the claimant's application for the establishment of a period of disability and disability insurance benefits under sections 216(i) and 223 of the Act, 42 U.S. C.A. §§ 416(i) and 423.

The claimant had filed a previous application on June 5, 1961, which application was denied after a full hearing. No judicial review of that decision was sought by the claimant, and consequently, it is res judicata as to the claimant's rights under the Act at any time prior to September 5, 1961, the date through which the claimant's initial application was effective. James v. Gardner, 384 F. 2d 784 (4th Cir. 1967). However, the claimant's insured status under the Act expired September 30, 1962, and therefore the claimant would be entitled to disability benefits under his present application if he could establish that he

was under a "disability"[1] at any time during the critical period, September 6, 1961 through September 30, 1962. Upon consideration of the entire record in this case, it appears that the decision of the Secretary adverse to the claimant is not supported by substantial evidence, and therefore, it must be reversed.

The claimant was born in 1910 and has lived most of his life in southwest Virginia. At the age of eleven or twelve he quit school after completing the second grade and has since acquired little or no formal education or training for skilled work. His work experience began on the family farm and, thereafter, included manual labor such as cutting timber and brush, clearing the right of way for a county road, stacking lumber in a lumber yard, laying railroad tracks, and hand-loading coal in the coal mines. He changed jobs often because, as he explains it, he was never very strong and after working for about a year he would have to "rest up" for a few months. He last worked as a coal miner on and off for a period of seven years prior to September, 1960, at which time he found that he could no longer load his usual quota of coal. He testified, "My back seemed like to come apart. Just down about where my hip bone joins to my back. It was just like a knife a cuttin'

when I'd lift—get down to 28-inch coal." At that time he also experienced two "black out" spells and pains in his knees and ankles.

Mr. Mullins is married and has thirteen children, two of which apparently were born since his retirement. He has been an ordained minister in the "Regular Baptist" church since 1958, and he preaches regularly every Sunday for about twenty minutes. Although he claims to be able to read parts of the Bible, he insists that he is otherwise illiterate. Other than short walks to nearby churches, it appears that the claimant has engaged in no other activities since 1960.

The aches and pains which he complains, forced his retirement are substantiated by several medical reports dated between 1961 and 1963. The earliest diagnosis, dated July 3, 1961, revealed a duodenal ulcer and osteoarthritis of the spine. A thorough examination in January, 1962, found general osteoarthritis, dental caries, and a history of peptic ulcer disease. The claimant's joints could be put through their full range of motion. The accompanying x-ray report listed slight pulmonary fibrosis, questionable osteoporosis and slight hypertrophic changes of lumbosacral spine, and hypertrophic changes in

1. As amended in 1967, the term "disability" means—
* * * inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *.
* * * * *
* * * an individual * * * shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists

for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.
* * * * *
For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.
42 U.S.C.A. § 423(d) (1), (2) (A) and (3), as amended, (Cum.Supp.1969).
This amended definition applies to court decisions which have not become final before January, 1968. Pub.L.No. 90-248, § 158(e), 81 Stat. 821.

the cervical spine with questionable descogenic disease at C–5. Examination of the gastrointestinal tract revealed a deformed duodenal bulb due to superficial changes from ulceration. However, no active ulcer crater was detected. A June, 1962 diagnosis found chronic bronchitis, fibrosis, osteoarthritis of the cervical spine, knees, and ankles, and an old duodenal ulcer. A March, 1963 examination revealed an active peptic ulcer, along with arthritis and "probably chronic bronchitis." An x-ray examination dated June 13, 1963, described extensive arthritis of the spine, and early pulmonary emphysema. An exhaustive examination in June, 1963, nine months after the claimant's insured status expired, produced the most illuminating reports. The examining physican noted little change in the joint symptoms since previous examinations, and no enlargement of the joints or impairment of the motion of the spine or extremities. The report states that although the patient formerly had much abdominal discomfort, his stomach had given him few symptoms in the past few years. The diagnoses were: (1) Psychoneurosis, with manifestations of anxiety, depression, fatigue, and hypochondriasis; (2) Ulcer, peptic, duodenal; (3) Osteoarthritis of the lumbar spine; (4) Anodontia and pyorrhea; (5) Amputation of left forefinger, old; (6) Varicose veins, mild. The physician gave as his impressions:

Although a conscientious effort has been made to find some physical cause for the more pronounced of Mr. Mullins' symptoms, no other diagnoses can be made on the basis of collected evidence. Could the relatively slow pulse and relatively low temperature be due to hyperparathyroidism? Could there be some obscure infection? These were the questions that entered my mind as we went about gathering evidence in the case. It appears that we must give a negative answer to all of these questions. In support of the evidence is the fact that Mr. Mullins' condition has not changed greatly in

three years in which time he has been examined and re-examined.

The question is whether a fifty-one year old, ignorant laborer with some degree of aching, depression, and a peptic ulcer is disabled totally and permanently. My impression is that he is, indeed, totally and permanently disabled. In this case, there seems to be no promise and no hope and, to a large extent, here lies the cause of his disability.

The accompanying psychiatric report, dated July, 1963, described Mr. Mullins as a man looking much older than his stated age. His behavior was appropriate and cooperative. His mood indicated chronic anxiety, but there was no evidence of depression or withdrawal, and no psychotic manifestations. His general level of intelligence appeared average, but insight was lacking. The report concludes:

My clinical impression of this man is that he has a longstanding psychoneurotic disorder, manifested primarily by anxiety, but which could also have tremendously intensified his discomfort from his physical disease. He talks and acts and feels like an elderly man, although he does not show any evidence of any organic mental deterioration. I feel that his prognosis for recovery from the psychiatric element of his illness is exceedingly poor. I feel that any treatment program would have to be aimed at dealing with his physical diseases first, and that he simply lacks the motivation or stamina to participate in any program of psychiatric rehabilitation.

A physician who examined the claimant in 1960 and again in 1964 added that the claimant's condition was static and that he was unable to work.

The 1967 decision of the hearing examiner, which ultimately became the final decision of the Secretary, merely reaffirmed the reasoning and conclusions in the opinion of the first hearing examiner, dated August 21, 1963. The

first hearing examiner considered in detail the evidence regarding the claimant's somatic impairments—gastrointestinal, arthritic and pulmonary—and found that the evidence did not indicate that any of these conditions were unusually severe. In addition, the hearing examiner considered the cumulative effect of these ailments, including the evidence of psychoneurotic disorders, together with the claimant's age, education, training, work experience, and concluded that although the claimant might be unable to do the heavy manual labor which he had previously done, he was still capable of light work *if he were motivated.*

 If the question here were solely whether the claimant's physical ailments—peptic ulcer, arthritis, pulmonary fibrosis and/or bronchitis—were disabling, we would have no difficulty in holding that substantial evidence supports the conclusion of the Secretary. But such is not the question. It is necessary to consider the cumulative impact of this man's several impairments on his ability to engage in substantial gainful activity. Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962); Hicks v. Gardner, 393 F.2d 299 (4th Cir. 1968). While the hearing examiner gave lip service to this standard, his opinion casually dismisses the evidence of psychoneurotic disorders as merely a problem of motivation, which he considered to be an irrelevant factor. But clinical findings of "psychoneurosis, with manifestations of anxiety, depression, fatigue, and hypochondriasis," and "longstanding psychoneurotic disorder, manifested primarily by anxiety, but which could also have tremendously intensified his discomfort," can hardly be considered irrelevant. See Beggs v. Celebrezze, 356 F.2d 234 (4th Cir. 1966); Branham v. Gardner, 383 F.2d 614 (6th Cir. 1967). Characterizing such evidence as simply a problem of motivation is not the kind of reasoned analysis which a determination of disability requires. See Carico v. Gardner, 377 F.2d 259 (4th Cir. 1967).

██ Also lightly dismissed were the opinions of two examining physicians, uncontradicted by other expert opinion, that the claimant was unable to work. We are aware that such opinions are not binding on the Secretary, and that "[t]he weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment." 20 C.F.R. § 404.1526 (1968). But here these opinions were based on examinations, the results of which were consistent with the other medical reports, and these expert opinions were "a proper basis for an evidentiary inference" on the question of disability. Underwood v. Ribicoff, 298 F.2d 850, 853 (4th Cir. 1962).

The decision of the Secretary becomes even more questionable in view of the nature of the evidence relied upon in finding, contrary to expert opinion, that the claimant was capable of gainful work. The reasoning and conclusions of the hearing examiner are as follows:

Certainly, this man has not engaged in skilled employment during his work history, but neither has he been limited to just loading coal by hand all of his life. His formal education is, indeed, quite limited *but he has developed a talent for speaking to others by his activity as a lay preacher, which activity also requires a knowledge of the Bible and that can only be acquired by study.* This activity has been a very important part of the claimant's life during the last few decades. It it not a gainful activity as practiced by claimant but it does require some physical stamina to preach weekly, or more often, and it also involves mental activity in preparing for his preaching by scriptural study. In view of these talents, we cannot equate this man with the tongue-tied illiterate who cannot function except by use of his muscles alone. *The Dictionary of Occupational Titles* contains descriptions of many

types of light physical activity such as watchman, building maintenance porter, janitor, etc., which can be done by those whose limitations, both physical and educational, keep them from following heavy manual labor activities. For the person who has developed an ability to meet and talk to other people, there are more various sorts of employment as salespersons of many kinds and positions where the ability to communicate is all important and the physical or technical portion of the work is minimal, such as bank porter, elevator operator, etc. Here, the claimant is a person of limited education facility, but one who has developed his own line of activity in this regard. He has developed an ability to speak to, and persuade, others. He is not incapacitated so that he no longer engages in his preaching. He is not immobilized. *He is still active enough physically that he has become a father for the twelfth time since the date of his application for disability insurance benefits.* We just cannot conscientiously find that a man possessing this much residual physical capacity is so completely impaired as to be absolutely incapable of engaging in any substantial gainful activity, *if he is motivated so to do.* As to motivation, and as to the presence of opportunity in a particular community, we are not compelled to decide. [emphasis added]

█ The record does not reveal whether the claimant's preaching, as he briefly described it, requires knowledge of the Bible, preparation or study. The speaking talent and physical stamina ascribed to the claimant appears to be based on pure speculation on the part of the hearing examiner. To avoid reversal by the courts, a finding by the Secretary that a claimant is capable of substantial gainful activity must be supported by substantial evidence, which has been defined as "more than a scintilla, but less than a preponderance." Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). Bas-

ing such a finding on no more than the fact he has fathered a child since the onset of his impairments is, we submit, grasping at scintillas. As did the hearing examiner, we have combed the record for something more substantial, without success. What we have found are a dozen medical reports substantiating, in varying degrees, the arthritic, pulmonary, gastrointestinal, and psychiatric impairments of which Mr. Mullins complains. There is no medical evidence or opinion suggesting that these impairments are remedial.

█ Although the Act casts upon the claimant the burden of proving a disability, this burden should not be carried to a point beyond a reasonable doubt. Thomas v. Celebrezze, id. The decision of the Secretary does not dispute the fact that the claimant had the four "medically determinable physical or mental impairments"[2] described above. It also concedes that the claimant is not able to perform heavy manual labor, and that he is virtually illiterate and untrained for other work. In view of these facts, the following regulation of the Social Security Administration, 20 C.F.R. § 404.1502 (c) (1968), if it may serve as a guide in any case, would apply here:

Where an individual with a marginal education and long work experience (e. g., 35 to 40 years or more) limited to the performance of arduous unskilled physical labor is not working and is no longer able to perform such labor because of a significant impairment or impairments and considering his age, education, and vocational background is unable to engage in lighter work, such individual may be found to be under a disability. On the other hand, a different conclusion may be reached where it is found that such individual is working or has warked despite his impairment or impairments (except where such work is sporadic or is medically contraindicated) depending upon all the facts in the case. In addition, an individual

---

2. An essential element of "disability." See note 1, supra.

who was doing heavy physical work at the time he suffered such impairment might not be considered unable to engage in any substantial gainful activity if the evidence shows that he has the training or past work experience which qualifies him for substantial gainful work in another occupation consistent with his impairment, either on a full-time or a reasonably regular part-time basis.

Example: B, a 60-year-old miner, with a fourth grade education, after a lifelong history of arduous physical labor alleged that he was under a disability because of arthritis of the spine, hips, and knees and other impairments. Medical evidence shows a combination of impairments and establishes that these impairments prevent B from performing his usual work or any other type of arduous physical labor. His vocational background does not disclose either through performance or by similarly persuasive evidence that he has skills or capabilities needed to do lighter work which would be readily transferable to another work environment. Under these circumstances, B may be found to be under a disability.

The evidence does not persuade us that the jobs suggested by the hearing examiner, with the possible exception of elevator operator, are within the physical or mental capabilities of the claimant. And in this age of automation, jobs such as elevator operator cannot be termed " * * * work which exists in significant numbers * * * in several regions of the country."[3] We realize that the 1967 amendment of the Act's definition of "disability" would not require the Secretary to show that "work exists in the

immediate area in which he [the claimant] lives, or whether a specific job vacancy exists for him * * *." Nevertheless, "[w]here the statute refers to 'any substantial gainful activity' the word 'any' must be read in the light of what is reasonable and not of what is merely conceivable." Thomas v. Celebrezze, 331 F.2d 541, 546 (4th Cir. 1964). In the context of this case, another statement of the Fourth Circuit, found in Dillon v. Celebrezze, 345 F.2d 753, 757 (4th Cir. 1965), is apropos:

We think it a wholly unrealistic application of the statutory standards to hold that an illiterate person of fifty-four whose only previous work experience involved the hard manual labor of coal mining and who was suffering under the cumulative psychological and physical handicap of these disabilities could be expected to obtain, much less to perform, any substantial gainful activity. To deny this claimant the disability relief afforded by the Social Security Act in our opinion would frustrate the very purpose for which Congress enacted this legislation.

We do not think that the record contains substantial evidence to support the Secretary's determination that the combined effect of the claimant's impairments was not so severe as to preclude his engaging in any substantial gainful activity during the critical period, September 6, 1961 to September 30, 1962. There is substantial evidence to the contrary.

Accordingly, we hold that during the critical period and thereafter the claimant was under a "disability" as defined both prior and subsequent to the 1965 amendments.[4] The decision of the

---

3. See note 1, supra.

4. Prior to 1965, sections 216(i) and 223 (c) (2) defined "disability" to mean "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment *which can be expected to result in death or to be of long-continued and indefinite duration."* (emphasis added) 42 U.S.C.A. §§ 416(i) and 423(c) (2). The 1965 amendment, Pub.L.No. 89–97,

79 Stat. 286, § 303(a), substituted the phrase "which has lasted or can be expected to last for a continuous period of not less than 12 months," for the italicized phrase above. This change was carried over in the 1967 amendment, see note 1, supra. These subsequent amendments would not affect our determination as to the required severity of the claimant's impairments. See James v. Gardner, 384 F.2d 784 (4th Cir. 1967).

Secretary is reversed, and summary judgment granted in favor of the claimant.

The clerk of the court is directed to send certified copies of this opinion and judgment to counsel of record.