**Augusta PARKER, Petitioner,**

v.

**RAILROAD RETIREMENT BOARD,**
**Respondent.**

**No. 18372.**

United States Court of Appeals,
Seventh Circuit.

March 29, 1971.

J. Chester Allen, Jr., South Bend, Ind., Sophia H. Hall, Chicago, Ill., for petitioner.

Myles F. Gibbons, Gen. Counsel, Dale G. Zimmerman, Railroad Retirement Board, Chicago, Ill., David B. Schreiber, Associate Gen. Counsel, Railroad Retirement Board, for respondent; Louis Turner, Chicago, Ill., Railroad Retirement Board, of counsel.

Before CASTLE, Senior Circuit Judge, KILEY and PELL, Circuit Judges.

KILEY, Circuit Judge.

This Petition, under the Railroad Retirement Act[1], for review of a decision of the Railroad Retirement Board (Board)[2] presents the question: whether substantial evidence in the record supports the Board's decision that petitioner Parker is not entitled to a disability annuity because he is mentally and physically able to engage in regular employment. We hold that the record evidence does not give the requisite substantial support and we set aside the decision.

Parker worked as a section laborer for the New York Central Railroad (Rail-

---

1. 45 U.S.C. § 228a *et seq.*

2. Charged with administration of the Act. 45 U.S.C. § 228j.

road) from 1945 to April 7, 1964, when Railroad doctors found him unfit to do the work.[3] His personal doctor examined him and reported to the Railroad Retirement Board that Parker, then 35 years old, suffered from chronic duodenal ulcer, a deformed left elbow and an old lumbo-sacral strain. In November, 1964, Parker applied for an annuity under Section 2(a) (5) of the Railroad Retirement Act, 45 U.S.C. § 228b(a) (5).[4] The Bureau of Retirement Claims on November 29, 1965 found Parker not disabled from regular work and denied the claim.

An attorney filed a second application on April 7, 1966. The Board denied the application in October, 1966 and March, 1967. The Appeals Council, on June 24, 1968, affirmed the Board's denial of Parker's application. The Appeals Council decision was affirmed by the Board and the petition for review before us followed.

A Board's decision should not be disturbed if there is substantial evidence in the record to sustain the Board's findings on which its decision is based and the decision is not arbitrary or legally incorrect. Schafer v. Railroad Retirement Board, 217 F.2d 874, 875 (7th Cir. 1954); Mahoney v. Railroad Retirement Board, 194 F.2d 752, 756 (7th Cir. 1952). *See also* Webb v. Railroad Retirement Board, 358 F.2d 451, 455 (6th Cir. 1966). Parker contends, however, there is not substantial evidence in the record to support the Board's decision that he was mentally and physically able to engage in any regular employment.[5]

The record discloses that Parker suffers painful discomfort arising from four sources: (1) a deformed left elbow which has limited motion, (2) an arthritic left knee causing a "slight limp," (3) a painful back condition, variously diagnosed as a "lumbo-sacral strain" and "lumbo-sacral sprain with left sciatic neuritis," (4) a "chronic, recurring duodenal ulcer." Also, there is agreement that Parker complained to doctors of headaches and dizziness. There is some disagreement among the examining doc-

---

3. Parker had worked for the Railroad for 19 years. The determination that he was "unfit" was made approximately one year before he would have been eligible for occupational disability compensation under § 2(a) (4) of the Act, 45 U.S.C. § 228b(a) (4).

4. Section 2(a) (5) of the Act provides, in pertinent part, as follows:

Sec. 2.(a) The following-described individuals, if they shall have been employees on or after the enactment date, and shall have completed ten years of service, shall * * * be eligible for annuities after they shall have ceased to render compensated service to any person, whether or not an employer as defined in section 1(a) (but with the right to engage in other employment to the extent not prohibited by subsection (d)):

* * * * *

5. Individuals whose permanent physical or mental condition is such that they are unable to engage in any regular employment.

5. Pursuant to the authority granted by Section 10(b) (4) of the Act, 45 U.S.C.

§ 228j(b) (4), the Board promulgated the following regulation regarding the establishment of permanent disability for work in any regular employment:

An individual shall be deemed to be permanently disabled for work in any regular employment if he has a permanent physical or mental condition, as that term is defined in § 208.10, and he is because of such condition unable to perform regularly, in the usual and customary manner, the substantial and material duties of any regular and gainful employment which is substantial and not trifling, with any employer, whether or not subject to the act.

20 CFR 208.17(a).

The Section 208.10 referred to in the above quotation provides, in so far as is pertinent here, as follows:

* * * [T]he term "permanent physical or mental condition" means a physical or mental impairment that can be expected to result in death or has lasted, or can be expected to last, for a continuous period of not less than 12 months.

20 CFR 208.10(a).

tors with respect to whether Parker suffered from a heart ailment.

The Board found that Parker's physical condition was not such that he was unable to engage in any regular employment within the meaning of Section 2(a) (5) of the Act. It noted that Parker's present physical condition did not appear "worse in any substantial respect than it was while he was working." The Board further found that Parker's principal disability was apparently due to his psychological condition, but noted that Parker did not appear to be unduly anxious or depressed, showed "no evidence of disturbed thought association, hallucinations or delusions," and that "while he admitted to a general feeling of tension, he felt himself without problems other than his physical conditions." The Board also found that his mental condition, taken alone or with his physical ailments, did not render him disabled. The Board concluded that Parker could work, but had made no attempt to and is unlikely to do so in the future.

■ We think the Board erred in the ground of its decision. The critical issue in our view is whether Parker's psychic problem put recognition of his ability to work beyond his control. If Parker's psychic disorder, oriented to his physical ailments, has induced the hysteria compelling the belief that he is physically disabled, and if it is shown that that uncontrollable belief will probably result in death or has lasted, or will probably last, continuously for at least twelve months, he is entitled to the annuity. See Branham v. Gardner, 383 F. 2d 614 (6th Cir. 1967); Mullins v. Cohen, 296 F.Supp. 181 (W.D.Va.1969). Cf. Mode v. Celebrezze, 359 F.2d 135, 136 (4th Cir. 1966); Biggs v. Celebrezze, 356 F.2d 234 (4th Cir. 1966); Ber v. Celebrezze, 332 F.2d 293, 299 (2nd Cir. 1964).[6]

■ It is difficult for us to determine on this record whether the Board reached this critical issue. If the Board did reach the issue and did determine that Parker's psychic condition was not such as to render him disabled under this test, we believe that such a determination is not supported by substantial evidence.

The two psychiatrists who examined Parker, Dr. Payne and Dr. Moir, described his mental condition as a "psychophysiologic[7] and psychoneurotic[8] disability" and a "psychophysiologic musculoskeletal reaction, by way of a conversion reaction."[9] It was the opinion of Dr. Payne and Dr. Erlandson, a vocational psychologist, that it was unlikely that Parker's understanding of his condition would alter in the future, that he was a poor therapeutic candidate, that a denial of disability would probably prolong his symptoms,

6. Although these cases involve suits against the Secretary of Health, Education and Welfare for disability annuities under the Social Security Act, the same rules apply to decisions of the Railroad Retirement Board. Duncan v. Railroad Retirement Board, 375 F.2d 915, 917–918 (4th Cir. 1967).

7. Psychoneurosis has been defined as: "Emotional maladaptations due to unresolved unconscious conflicts. One of the two major categories of emotional illness, the other being the psychoses. A neurosis is usually less severe than a psychosis, with minimal loss of contact with reality. Thinking and judgment may be impaired. A neurotic illness represents the attempted resolution of unconscious emotional conflicts in a manner that handicaps the effectiveness of a person in living." See "A Psychiatric Glossary," (Second Edition 1966) (an official manual of terms published by the American Psychiatric Association, quoted in Branham v. Gardner, 383 F.2d 614, 619 (6th Cir. 1967)).

8. "Serious disturbances of any organ system caused by prolonged, unresolved emotional conflict." See Branham v. Gardner, supra at 623.

9. " * * * a reaction in which unacceptable unconscious impulses are converted into bodily symptoms. Instead of being experienced consciously, the emotional conflict is expressed by physical symptoms." See Branham v. Gardner, supra at 619.

and that he might not ever again become a productive member of our economy. Dr. Payne stated that Parker was not consciously malingering, a fact found especially significant in other cases involving psychoneurosis,[10] and no doctor stated that he was. Dr. Payne stated Parker generally believed himself incapable of working because of his physical ailments, a condition borne out by the report of Dr. Moir.[11]

■ Several doctors commented on Parker's unconscious lack of motivation and the Board apparently considered this the heart of Parker's problem and denied benefits on this basis. This emphasis on lack of motivation in a case such as the one before us is erroneous. As stated by the Sixth Circuit in Branham v. Gardner, *supra*, at 633:

> Under ordinary circumstances, a Hearing Examiner's finding that an applicant for disability benefits lacked the motivation to work would be entitled to some weight; but when the applicant is suffering from psychoneurosis, lack of motivation to work is irrelevant. In such an affliction, it is held that lack of such motivation to work is, in itself, one of the symptoms of the disorder from which appellant admittedly suffers.

*See also* Mullins v. Cohen, 296 F.Supp. 181, 185 (W.D.Va.1969).

■ And the Board's finding that none of the examiners indicated that Parker's condition "would not improve with proper treatment, or if he would go to work," cannot be taken as a finding of a failure to meet the statutory test of an illness of long-continued and indefinite duration which has substantial evidence. As noted by the Second Circuit in *Ber*:

> A mere failure to supplement the above evidence of an illness of indefinite duration with a report by an examining psychiatrist that, whatever the effect of a neurosis on claimant's condition, that neurosis is intractable to therapy, cannot bar the grant of disability benefits to the claimant. At the very least, "the applicant has raised a serious question and the evidence affords no sufficient base for the Secretary's negative answer." 332 F.2d at 300.[12]

■ We conclude that the record does not contain substantial evidence to support the Board's determination that the claimant was able to engage in substantial gainful employment. There is substantial evidence to the contrary. The application has been pending now for over six years and we see no reason to remand the case for the taking of further testimony. *See* Mode v. Celebrezze, *supra*, at 137.

Accordingly, the judgment is reversed, and the case remanded to the Board for the allowance of disability benefits payments to petitioner.

10. *See* Branham v. Gardner, 383 F.2d 614, 632 (6th Cir. 1967); Mode v. Celebrezze, 359 F.2d 135, 136 (4th Cir. 1966); Ber v. Celebrezze, 332 F.2d 293, 300 (2nd Cir. 1964).

11. Neither psychiatrist stated whether or not Parker was disabled. Dr. Payne's report concluded: "Whether or not this [psychological] condition should be considered permanently totally disabling is essentially an administrative decision."

The only doctor to make a statement as to whether or not Parker was disabled was Dr. Woodford, his personal physician, who stated that Parker was physically disabled.

12. The court in *Ber* reversed the judgment in favor of the Secretary of Health, Education and Welfare, and remanded the cause to the district court with instructions to enter judgment in favor of appellant.