

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-3-2004

# Robinson v. RRB

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-2391

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Robinson v. RRB" (2004). *2004 Decisions.* Paper 1030.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1030

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2391

JEFFREY ROBINSON,

Respondent,

v.

RAILROAD RETIREMENT BOARD,

On Petition for Review of a Decision of the United States
Railroad Retirement Board
(R.R.B. No. 02-AP-0115)

Submitted Under Third Circuit L.A.R. 34.1(a)
January 23, 2004

Before: ALITO and CHERTOFF, Circuit Judges, and
DEBEVOISE,* Senior District Court Judge

(Opinion Filed: February 3, 2004)

OPINION OF THE COURT

**DEBEVOISE, Senior District Court Judge**

_____

*Honorable Dickinson R. Debevoise, Senior United States District Judge for the District
of New Jersey, sitting by designation.

Petitioner, Jeffrey L. Robinson, filed a petition for review of a final decision of Respondent, the United States Railroad Retirement Board (the "Board"), which affirmed and adopted the decision of the hearings officer denying Robinson's claim for a period of disability and early Medicare coverage under the Social Security Act, 42 U.S.C. §301, et seq. We find that critical findings of the hearings officer were not supported by substantial evidence and that the hypothetical question posed to the vocational expert by the hearings officer did not incorporate all of Robinson's limitations. To the contrary, the vocational expert's testimony established that Robinson had an impairment or combination of impairments which prevented him from performing regular employment. We will reverse and remand with instructions that an order granting a period of disability and early Medicare coverage be entered.

## I. The Proceedings

From August 1976 until February 1998 Robinson worked as a railroad backhoe foreman. Thereafter he applied for and was awarded an occupational disability annuity under section 2(a)(1)(iv) of the Railroad Retirement Act, 45 U.S.C. §231(a)(1)(iv). He established that he had a current connection with the railroad industry, had completed twenty years of service and was found unable to perform his regular railroad occupation. His application for an occupational disability annuity was also an application for a period of disability and early Medicare coverage under the Social Security Act. This application was denied on March 12, 1999.

2

On March 20, 2000, Robinson filed a second application for a period of disability and early Medicare. His application was denied at the various administrative stages, and he appealed. On January 31, 2002, after an evidentiary hearing, the hearings officer held that Robinson's impairments do not prevent him from engaging in all regular employment. Robinson appealed to the Board. In a May 30, 2002 decision the Board remanded the case to the hearings officer to supplement the record with testimony of a vocational expert providing examples of jobs that Robinson could perform.

A telephone hearing was held at which a vocational expert testified in response to hypothetical questions which the hearings officer posed and in response to questions which Robinson's attorney posed. In an August 9, 2002 decision the hearings officer found once again that Robinson was not disabled from all regular employment. Robinson appealed this decision. On March 3, 2003, the three-member affirmed and adopted the decision of the hearings officer, with one Board member dissenting. His petition to this Court followed.

## II. The Facts

Robinson was 48 years old as of the date of the administrative hearing. He left his position as a railroad backhoe foreman alleging disability on the basis of carpel tunnel syndrome, right rotator cuff repair and cervical discectomy and fusion. He underwent a cervical discectomy and fusion as well as a right subacromial decompression and distal clavicle resection. He was operated on for the carpel tunnel syndrome, and by the time of

3

his initial hearing before the hearings officer, his primary care physician, Lance C. Sweeney, D.O., diagnosed his impairments as i) cervical disc degeneration, ii) neck pain, iii) chronic right shoulder rotator cuff tendinitis, iv) lumbar disc degeneration and v) low back pain.

In addition to continuing treatment by Dr. Sweeney, Robinson was treated by K. Nicholas Pandelidis, M.D., an orthopedist. Robinson's last visit to Dr. Pandelidis was approximately one month before the hearing. At that time the doctor wanted him to have an MRI on his lower back, but Robinson delayed the procedure because of its expense and his lack of insurance. Both Dr. Sweeney and Dr. Pandelidis submitted reports which were introduced in evidence before the hearings officer. A Board consultant physician, Stephen Laucks, M.D., examined Robinson on April 18, 2000, and his report was entered into evidence.

At the initial hearing before the hearings officer Robinson testified about his physical condition, pain and activities. As to his former work he stated, "I would run the backhoe to a certain extent and then I'd get off and help the men do their work, what we had to do, and then I'd get back on and run the backhoe again if it needed to be done." (A.R. 152)[1]. He now lives alone in a one-story house. He stated that he could stand for one-half to one hour before experiencing unbearable pain, walk for a half hour to forty-

---

[1] "A.R." refers to the administrative record submitted in support of the Board's first decision. "S" refers to the administrative record submitted in support of the Board's second decision. Most of the material contained in the first record is the same as that contained in the second record.

five minutes. Despite an operation he cannot do overhead lifting because of his rotator cuff condition. He described continuous pain in his back and extending into his neck. He is unable to sit or to stand for any length of time. To relieve the pain he stated, "I just go where I can stand it one way, and then I either stand up for a little while, for a little bit to try to ease it off. Even at night time I have a hard time sleeping. I can't even sleep." (A.R. 158). For medication he takes Viox, Elavil and Tylenol to relieve the pain as prescribed by his orthopedist.

Robinson does not use a walker or a cane. He walks for about ten minutes each day, which makes his pain feel worse. Asked how his back prevented him from working, Robinson testified, "[b]ecause I can't do anything. I can't bend over, I can't hardly walk, I can't hardly stand." (A.R. 167). He loses his balance and falls about once every other day. Because of his shoulder condition, he testified, "I don't really have any use in my right arm." (A.R. 169) His condition worsened during the previous twelve months.

Robinson drives a vehicle with an automatic gear shift. He uses the car once a week to go to the store, which is about a fifteen minute drive from his house; he visits his mother once a day, which is about a two minute drive from his home. Once a month he attends hour-long meetings of a Masonic Lodge, standing up during the meeting if required to relieve the pain. He does "a little bit of my housework," and "[I] try to do a little bit of my laundry and do stuff around the house that I can do and other than that there my daughters come down and give me a hand and help me do some of it," (A.R.

5

176).   He can do minor repairs such as putting a handle on a door and he does his own cooking.

When driving to the place where the hearing took place, a distance of about forty-five minutes from his home, Robinson had to stop the car and get out to relieve his pain. During the hearing he was required to stand up on several occasions.

At the hearing which followed the Board's remand of the case in order that the hearings officer could receive the testimony of a vocational expert, a vocational expert testified.  The hearings officer first asked and the vocational expert responded:

> HEARINGS OFFICER: Mr. Anderson if I find that the appellant can no longer perform his past relevant work and that he has the following restrictions: lifting and carrying 20 pounds occasionally, ten pound frequently, with occasionally (sic) stair and ladder climbing, occasional reaching in all directions with the right, upper extremity and sitting, standing, and walking for about six hours out of an eight-house workday, are there any skilled or semi-skilled jobs in the national economy to which his skills are transferable given his age, his education and his work experience?
>
> WITNESS: No your Honor.

(A.R. 169)

Having been informed that there were no skilled or semi-skilled jobs in the national economy to which Robinson's skills were transferable, the hearings officer ascertained through this vocational expert's testimony that under the Social Security and Railroad Retirement Board's regulations there were 2500 unskilled jobs, 900 at the medium-exertional level, 1400 at the light-work level and 200 at the sedentary-work

6

level.

Applying the same restrictions as set forth in the above-quoted hypothetical question (which assumed no limitations regarding the left, upper extremity) the vocational expert was of the opinion that there would be a 40% erosion of the 200 sedentary base and a 60% erosion of the light - occupational base. He gave examples of kinds of unskilled jobs that would remain in the sedentary base, e.g., surveillance system monitor, order clerk (food and beverage), call-out operator, counter clerk, ticket taker, and parking lot cashier.

At that point the hearings officer added additional limitations to his hypothetical- lifting a maximum of 10 pounds, with occasional bending, occasional stooping, occasional kneeling, crouching, and crawling and several other limitations:

> HEARINGS OFFICER: If in addition to the previous restrictions I find that the appellant has the additional restrictions of lifting a maximum of 10 pounds, with occasional bending, occasional stooping, occasional kneeling, crouching, and crawling, the need to avoid climbing and balancing, the need to avoid working at heights, and around dangerous machinery, and an additional restriction of avoiding repetitive activities with both upper extremities, and avoid operating hand controls.
>
> ...
>
> HEARINGS OFFICER: What effect would these additional restrictions have on the jobs to which you testified?
>
> WITNESS: I think all those positions would remain, including the light, as well as sedentaries.
>
> HEARINGS OFFICER: If in addition to the previous restriction I find that the appellant has the additional restriction of no overhead reaching with the

7

right, upper extremity, what effect would that additional restriction have on the jobs to which you testified?

WITNESS: No further relation.

(A.R. 172-74).

This hypothetical was based upon a finding that Robinson could engage in occasional stooping, occasional kneeling, crouching, and crawling. It contained the assumption that Robinson could sit, stand and walk about six hours in an eight hour workday. Then the hearings officer asked a hypothetical which incorporated the following limitations:

> HEARINGS OFFICER: If I make a finding which is consistent with all of the restrictions to which the appellant previously testified, namely that he can stand no more then one hour at a time, walk for no more then one hour, sit for a maximum of 45 minutes, lift and carry less than ten pounds, never bend, should avoid performing fine and gross manipulated bilaterally, are there any jobs that he can do in the national economy?
>
> WITNESS: The erosion of the occupational brief would be complete. There would be no jobs.

(A.R. 174)

On cross-examination Robinson's attorney followed up on the situation that would exist if Robinson could not work a full day:

> ATTORNEY: Okay. Last couple questions I have, just you're familiar with social security's definition of regular and continuing basis?
>
> WITNESS: Okay. Yes.
>
> ATTORNEY: And is it your understanding that that means full-time work?

8

WITNESS: Yes.

ATTORNEY: Okay. And how do you define that in terms of hours or days?

WITNESS: Well that may vary depending on the length of the lunch break. Lunch breaks today are normally, today, are one-half hour and there would be a 15-minute break in the morning and a 15-minute break in the afternoon. Ah, with the total usually equaling eight hours, but occasionally seven and a half-hours.

ATTORNEY: I'm not going to go through the different medical evidence that, you know, basically states that Mr. Robinson couldn't work eight hours a day, but it's your opinion that if someone couldn't work on a full-time basis like that that that's (sic), ah, would be a problem for most employers?

WITNESS: Yeah.

ATTORNEY: Okay. And in fact, that they wouldn't be employable?

WITNESS: I don't think they'd be employable physically, ah, but you know, that's what the judge's . . .

(A.R. 181-83)

The hearings officer's August 9, 2002 decision must be read in conjunction with her January 31, 2002 decision. Pursuing the applicable five-step sequential evaluation process the hearings officer resolved the first four requirements, namely, that Robinson was not working, that he has severe impairments that affect his ability to perform basic work activity, that his impairments do not meet any of the impairments listed in the Social Security Administration's Listing of Impairments, 20 C.F.R. §404.1520(d), and that he was unable to perform his past relevant work as a backhoe operator and track repairman

9

which involved medium and heavy work. These findings are not in dispute on this appeal.

The hearing officer's critical finding which is at the heart of this appeal is:

> The hearings officer finds that the appellant, despite his impairments, can perform sedentary work consisting of occasional bending, stooping, kneeing (sic), crouching and crawling. He should avoid climbing and balancing, working at heights and around hazards. Based on the appellant's history of right rotator cuff tendinitis and bilateral carpel tunnel syndrome, he should avoid repetitive activities with the upper extremities, reaching and overhead activities with the right upper extremity, and operating hand controls.

(A.R. 006)

Implicit in the finding that Robinson was capable of performing sedentary work was a finding that he could sit for about six hours in an eight-hour day. The controlling hypothetical addressed to the vocational expert assumed that Robinson could sit, stand and walk for about six hours of an eight-hour day. The hearings officer recognized that there was evidence that Robinson could never bend, stoop, kneel, crouch, or crawl, and she provided her reasons for rejecting that evidence. She noted that although Robinson's gait is slow, he does not use a cane, walker or crutches for ambulation and does not use a back brace. She also found that Robinson's testimony that he is able to do household chores, laundry and small repairs, that he prepares dinner, attends a lodge meeting once a month, drives and visits his mother once a day and drives to the store once a week demonstrates that his "activities of daily living and social functioning are not significantly limited. The appellant's activities indicate that his remaining exertional and manipulative

10

abilities would not prevent him from performing sedentary work." (A.R. 006)

The hearings officer recited that "[t]he Railroad Retirement Board regulations define sedentary work as involving lifting no more than 10 pounds at a time with occasionally lifting and carrying articles like small tools or ledgers, and sitting for approximately six hours out of an eight-hour work day with occasional standing and walking." (A.R. 007)

In her previous January 31, 2002 decision the hearings officer summarized the medical reports of Robinson's orthopedic physician, Dr. Pandelidis, and of the Board consultant, Dr. Laucks.

Referring to Dr. Pandelidis's reports, the hearings officer ruled that a basis for rejecting his opinions was the inconsistency in the opinions expressed in different reports. Specifically she noted that in his February 4, 2000 assessment Dr. Pandelidis stated that Robinson should be able to sit, stand and walk for less than six hours out of an eight-hour workday; in his January 14, 2001 report Dr. Pandelidis stated that Robinson can sit, stand and walk less than one hour out of an eight hour workday; in his August 17, 2001 Dr. Pandelidis concluded that Robinson can sit, stand and walk for less than two hours in an eight hour workday. The hearings officer, in addition to noting these inconsistencies concluded "that none of the assessments are consistent with objective medical findings." (A.R. 010)

The hearings officer found in her first opinion that Robinson's complaints of

11

disabling pain "are out of proportion to the medical evidence" and that Robinson's "activities of daily living and social functioning are not significantly limited. The appellant's activities indicate that his remaining exertional and manipulative abilities would not prevent him from performing sedentary and light work." (A.R. 011).

This conclusion in the first opinion was modified in the hearing officer's second opinion in which she found that Robinson had the "residual functional capacity to perform sedentary work that consists of occasional bending, stooping, kneeling, crouching and crawling." (S-008).

Citing Social Security Administration records that recognize 200 unskilled occupations, each representing numerous jobs on the national economy, the hearings officer relied on the vocational expert's testimony that Robinson could perform 60 percent of the sedentary occupations. She found that "[t]he above numbers represent jobs in such significant numbers that the appellant cannot be considered disabled for all substantial employment." (A.R. 007). The hearings officer concluded on the basis of this finding that Robinson was not entitled to a period of disability under §216(i) of the Social Security Act or early Medicare coverage.

A majority of the Board affirmed the denial of Robinson's claim, and Robinson's petition followed.

## IV. Discussion

This Court has jurisdiction of a petition from a decision of the United States

Railroad Retirement Board.

A decision of the Board will not be set aside if it is supported by "substantial evidence on the record, when viewed in the light that record in its entirety furnishes," Kelly v. Railroad Retirement Board, 625 F.2d 486, 493 (3d Cir. 1980). Substantial evidence is that which a reasonable mind would accept as adequate to support the result. Richardson v. Perales, 402 U.S. 389, 401 (1971). In arriving at his or her findings a hearings officer must accord a treating physician substantial weight. Morales v. Apel, 225 F.3d 310, 317 (3d Cir. 2000). Similarly, Social Security regulations provide that a treating physician's opinion is given great weight provided it is "well supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1527(d)(2).

Robinson challenges the hearings officer's findings in two critical respects. First, Robinson challenges the finding that he could perform sedentary work which required occasional bending, stooping, crouching and squatting and the ability to sit approximately six hours out of an eight-hour workday with occasional standing and walking. The fact that Robinson possessed these abilities was incorporated in the hearings officers hypothetical question posed to the vocational expert. Second, Robinson challenges the finding that his "subjective complaints . . . are not fully credible. . ." (A.R. 012).

It is highly questionable whether the hearings officer's finding that Robinson could occasionally bend, stoop, crouch and squat is supported by substantial evidence. Dr.

13

Pandelidis was Robinson's orthopedic specialist for a number of years. In a March 2000 report he checked the space between "occasionally" and "never" on the form where it called for his evaluation of Robinson's ability to bend/stoop, crouch/squat/climb. In January 2001 evaluation he checked the bend/squat category "occasionally" and the crawl/climb category "never." Robinson's impairments were progressive and in his August 2001 report Dr. Pandelidis was not called upon to evaluate Robinson's ability to bend/stoop, crouch/squat/climb but instead found him to be "totally disabled."

The Board's own consultant stated that "I would relate the claimant's reliability as good", (S-051) and concluded that "I think stooping and kneeling would be very difficult for this patient secondary to the pain he expresses when moving in these fashions. Likewise, crouching and crawling would be [extremely] difficult and uncomfortable for this patient."

More critical was the hearings officer's finding that Robinson could sit for a period of approximately six hours in an eight-hour working day. Robinson's own testimony demonstrated that he was capable of sitting continuously only for a period of 45 minutes to an hour. This was evidenced by his inability to drive to the first hearing without stopping his automobile once during the short trip from his home to the site of the hearing in order to relieve his back pain. It was evidenced by his need to stand on several occasions during the course of a relatively brief hearing. It was evidenced by the extremely limited activities of his daily life.

This inability to sit, a requirement for a sedentary job, was confirmed by three reports of the orthopedist, Dr. Pandelidis. The hearings officer advanced two reasons for rejecting Dr. Pandelidis's reports, neither of which survive examination: i) an asserted inconsistency in the reports and ii) inconsistency with objective medical findings. As to the first ground, the hearings officer stated: "[t]he hearings officer notes the inconsistencies in the various assessments provided by Dr. Pandelidis."

The so-called "inconsistencies" concern the length of time that the orthopedist estimated that Robinson could sit in an eight-hour workday: i) less than six hours in his March 2000 report; ii) less than one hour in his January 2001 report and iii) less than six hours in his August 2001 report. The "inconsistency" is not attributable to Dr. Pandelidis; it is attributable to the forms that the Board required him to complete.

The question on the Board's form used in March 2000 and in August 2001 read:

In an 8 hour workday, claimant can sit:

☐ less than 6 hours total    ☐ 6 hours or more

The question on the Board's form used in January, 2001 read:

In an 8 hour day, claimant can sit without taking measure to relieve his pain.

____1____2____3____4____5____6____7____8____ hours.

In each case Dr. Pandelidis checked the lowest number of hours that the form permitted. His answers were perfectly consistent with each other, with his opinions and

15

with Robinson's persuasive testimony that approximately one hour was as long as he could sit without taking measures to relieve pain.

The hearings officer's statement that none of Dr. Pandelidis's assessments are consistent with the objective medical findings ignores evidence in the record. Dr. Pandelidis diagnosed Robinson's impairments as cervical disc degeneration, lumbar disc degeneration and right shoulder rotator cuff tendinitis. These conditions were confirmed by the physical examination which the Board's consultant, Dr. Laucks, performed on April 18, 2000. As early as September 1994 a myelogram demonstrated a minimal bulge at L4-L5 (S-0120, 0121). In June 1996 an MRI showed evidence of degeneration at the C6-7 disc (S-0106). A September 1997 MRI showed "some subacromial chronic impingement, with degenerative tendinosis on the supraspinaties. No rotator cuff tear is demonstrated." (S-0105). The record contains several reports of Earl J. Wenner, Jr., D.O., FAA, PMR who engaged in electrodiagnostic testing relating primarily to Robinson's carpel tunnel syndrome and cervical difficulties.

The hearing officer's finding that Robinson could perform sedentary work, i.e., that he could sit for approximately six hours out of an eight-hour day with occasional standing and walking, was not supported by substantial evidence.

Further, the hearings officer's reasons for rejecting Robinson's complaints of pain do not find support in the record. She cited his ability to do household chores, laundry and small repairs and prepare dinner without noting the extremely limited nature of his

16

performance of these tasks. She cited Robinson's daily visits with his mother and weekly drive to a store without noting that the mother lives but two minutes distance from his home and that the store is but fifteen minutes from his home. She failed to note that he was unable to drive the short distance from his home to the first hearing without stopping to relieve his pain or that he was required to stand several times during the hearing. She did not refer to the greatly circumscribed nature of the activities in which Robinson is able to engage during each day of his life. The finding that Robinson's "activities of daily living and social functioning are not significantly limited" (S-006) is clearly not supported by the record.

Nor is the hearing officer's finding that Robinson's complaints of disabling pain are out of proportion to the medical evidence and are not fully credible supported by the record (A.R. 011,012).

Robinson's complaints of pain are fully supported by the reports of his treating orthopedist, by the report of his internist, Dr. Sweeney, and even by the report of the Board consultant, Dr. Laucks. These reports are referred to above in connection with the hearings officer's finding that Robinson could sit for six hours during an eight-hour workday. The degree of pain is confirmed by the limited activities in which Robinson engages.

Having concluded that the hearings officer's finding that Robinson could engage in sedentary work is not supported by substantial evidence, it follows that the opinions of

17

the vocational expert provide no support whatsoever for the hearings officer's finding that there are jobs in the national economy that Robinson could perform, and that, therefore, he is not disabled.

The hearings officer asked a hypothetical based upon the residual functional capacity to lift and carry 20 pounds occasionally, 10 pounds frequently, with occasional stair and ladder climbing, occasional reaching in all directions with the upper right extremity and sitting, standing and walking for about six hours in an eight-hour day. The vocational expert testified that with these limitations there would be a loss of approximately 40% of the 200 sedentary occupations, leaving 60% which Robinson could perform. When the vocational expert added the additional limitations of lifting a maximum of 10 pounds, with occasional bending, stooping, kneeling, crouching and crawling, the need to avoid climbing and balancing, the need to avoid working at heights and around dangerous machinery, and an additional restriction of avoiding repetitive activities with both upper extremities and avoiding operating hand controls, the vocational expert testified that positions would exist to the same extent as he previously testified in response to the first hypothetical.

Each of these hypothetical questions contained at least one, and perhaps two, major factual assumptions which are not supported by substantial evidence. The finding that Robinson could occasionally bend, stoop, kneel, crouch and crawl is supported by only the slimmest evidence. The finding that Robinson could sit, stand and walk for

18

about six hours in an eight-hour day is not supported by substantial evidence and, in fact is, conclusively negated by the evidence before the hearings officer. A hearings officer's (or ALJ's) decision, insofar as it is based upon a vocational expert's responses to hypothetical questions, is not supported by substantial evidence if the hearings officer (or ALJ) did not accurately portray the claimant's impairments and limitations. Chrupcala v. Heckler, 829 F.2d 1269 (3d Cir. 1987). The vocational expert's response to the hearings officer's hypothetical in this case was based on assumptions which lacked support in the record. Consequently the finding that despite Robinson's impairments there are a significant number of jobs in the national economy that he could perform must be rejected.

Contrary to the hearings officer's finding, the testimony of the vocational expert affirmatively establishes that there are no jobs in the national economy that Robinson could perform. When asked whether Robinson's inability to work eight hours a day would be a problem for most employers, the vocational expert responded, "I don't think they'd be employable physically . . ." (S-182, 183).

## V. Conclusion

The hearings officer's finding that Robinson is not disabled is not supported by substantial evidence. This case has been before a hearings officer and the Board on two occasions. The Board and the hearings officer found on each of those occasions that only the finding that there were jobs in the national economy which he could perform

19

prevented Robinson from prevailing on his claim. We have found that finding is not supported by substantial evidence and that the evidence can only support a finding that Robinson is disabled. Consequently, he is entitled to the relief he sought. For the reasons set forth in this opinion we will reverse the decision of the Board and remand the case to the Board with instructions to grant Robinson's claim for a period of disability and early Medicare coverage under the Social Security Act.

/s/ Dickinson Debevoise
SENIOR DISTRICT COURT JUDGE